and senate sales committee on intelligence. Mr. McLenahan for the appellant, Mr. Valero for the appellees, Mr. Fulham, and Mr. Kuskiriani. Good morning, your honor. My name is Kel McLenahan. I'm here on behalf of Sean Musgrave, the appellant in this case, and most of the questions that you would have to resolve in this case were addressed in the previous case, and so we can sort of skip straight to the sticky questions that are unique to this case that separate it from everything else. Mr. Musgrave does not dispute that privilege is absolute when it applies. We dispute that it does not apply and that the district court's reliance on the previous statement that committee reports are protected necessarily implied in that case or where appropriate, and that not all committee reports are protected just like all fact-finding is protected as this court held in in Ray Shields case discussed before. This report has a unique pedigree where when it was ordered to be compiled, it was ordered to be compiled for dissemination, for being presented to the government. I mean, you pointed to things in the record that that support that purpose, but it seems quite counterintuitive to infer that there was some exclusive purpose. I mean, the notion was this was going to become a touchstone for all kinds of reform efforts throughout government, presumably including legislative efforts. I mean, that is what can be a report, an investigation can be undertaken with the purpose of informing a decision not to legislate. So I think you're maybe placing more on the purpose to inform and help perhaps educate CIA actors than it can bear. And that is a well-taken point. I think that the distinction here and why this is an edge case is that not only was the stated intention to be for the benefit of the executive branch and for the public, but the actions were for the benefit of the executive branch, that when it was completed, it was immediately sent to the executive branch. It was not held for deliberations and the quotes, as you pointed out, were even from Senator Burr, who tried to call it back, said that the study does not offer any recommendations. And I think that the key part here is that Gravel and Doe and Hutchinson all talk about the deliberate nature of the records, the purpose for the deliberative process, and making this feature debate sort of an uber version of the deliberative process privilege. I understand that that's your theory, but if we disagree, if we look objectively at the nature of the act, as the Supreme Court describes the inquiry in Bogan versus Scott Harris, if we say it is a constitutionally authorized and predicted activity of the Congress to investigate and write reports, is that the end of your case? No, Your Honor, because there can be in any field of law an authorized act that is not privileged. That was the core of NRA's sealed case was not everything that is authorized, not everything that is within Congressman Perry's official duties was privileged. And the question here is, is it privileged? And everything else in this case relies on that determination, because this document is supposed to be released publicly. It was. It was put through declassification review. There was a lot of negotiation between the different branches. And the only reason the executive summary was all that was released was because the CIA and the White House said it's going to take 846 years to review the whole summary. We'll get the rest later. And piggybacking on Judge Pilgrim's earlier sentiments to you, I'm also concerned again about line drawing here. When you think about the original intent of the document, its oversight doesn't intend to have recommendations. It's a learning objective. And that's where it starts. But then later on, perhaps, legislation or something could come out of it. Do we go back to what the document started as and then how it finished in the sense of it's just a final report? Don't worry about the legislation later. Don't worry about a later Congress, which changes hands and there's different committee members now kind of recharacterizing the document. I would phrase it a little bit differently. But yes, that is the core of our position, that if you look at the intention stated when they started writing the report, and then you look at what they did when they finished the final report. At that point, they had stated multiple times that this was to be given to the executive branch. It was not to be a secret Senate project that nobody saw. It was supposed to be declassified. They'd actually tried to negotiate declassification. And that, as you might tell a first grader, there are no takebacks. So, what if the Senate had voted, and they voted 100 to zero, that we are not going to further publish this report in redacted form? Um, all we're going to do is publish this redacted executive summary and full stop. At what point? They take that vote, and that's what they decide. When? After it's written? Yeah, after it's written. So, if they were to vote to not disseminate anything else, I would say that that is still subject to the common law right of access, just like a judicial order. They've taken the legislative act of saying, by vote, we're not going to, we're not going to disclose this any further. You're saying that that's, that's not protected by a speech or debate clause? Correct, because it's not deliberative. The vote was ex post facto. It was after the fact, and it was, does not change the fact of whether or not it's privileged. They can choose whether or not to claim a privilege, which is what they're doing now, but they cannot change whether or not it was privileged in the first place. Do you agree that your action is, sounds in mandamus, whether you call it under the All It's definitely akin to mandamus. We did not make a mandamus claim for the very reason that mandamus, arguably, right now, does not apply to Congress. And so, That's on the first page of your complaint. We did not cite the mandamus act, I don't think. Looking at page seven, and you say that we have jurisdiction under 1331 and 1361. Sorry, that was the jurisdiction. Yes. And then you cite the All Writs Act in the introductory paragraph. Yes, sir. So, so you're seeking some sort of a writ? We're seeking, yes, which is the only thing available. As the predecessor lawyer stated, this would be an unenforceable right. Well, I'm trying to get to how, like, this is a clear and indisputable right to relief or clear duty to act when basically the, to, to get to the kernel of what you're alleging here is that Congress, the Senate, the Senate committee, select committee published an executive summary, but they had a clear duty to publish a redacted full report and that somehow that's um, such an abuse and so outside the bounds of their authority that that's subject to mandamus. I understand. How do we get there? I understand the question. I apologize. So, I think that it's not that they had a duty to publish it. I think that they had a duty to provide it upon request, just like, boy, you don't have an affirmative duty under FOIA to publish every government record, but you do have a duty to publish them when they are requested, if they are agency records and meeting all the other standards of FOIA. In this case, if it meets the public record status test and it's not covered by speech or debate, then yes, they have a duty. I think that you're kind of, that's not really what I'm trying to get at. Whether somebody requested it or not, the crux of this is that some sort of, that the committee had a clear duty not just to disclose upon request a redacted executive summary. It had a clear duty to disclose a redacted full report. So, like, like, I'm just trying to understand, like, the delta between those two things, how that leads to grounds for a mandamus action. I think that the question is one step removed from that. I think that the question, and this was the question that was raised by the appellees, that your argument was not raised below, is that, you know, does the right apply, period. And once you decide whether or not speech or debate clause blanketly covers all committee reports, or, and that no committee reports, or if this committee report was not a public record, if you get past those, then, then would be the time, honestly, in my opinion, to argue about whether or not, you know, mandamus applied. But until then, that's kind of my, my point is that even if you can kind of clear the hurdle that speech and debate clause doesn't apply, you still got to clear another jurisdictional hurdle, which is that, that somehow, by not releasing a redacted full report, instead of, you know, in addition to releasing a redacted executive summary, is sort of violation of some non-discretionary duty that, that can result in mandamus jurisdiction. And I just don't see how you get there. I, I would respectfully say that the non-discretionary duty is the common law access to public records, that if. On, on that, I'm sorry, I interrupted you in the middle of your sentence. The non-discretionary duty is the common law right of access to records. Pardon me? Oh, sorry. That, that is the duty that if there is a common law right of access to something, then not disclosing it is, or disclosing it is not a discretionary duty. So on that, I mean, just as historically that right applied to the executive branch, but it has been supplanted by FOIA. Why isn't the same true in the context of this case where the Senate Intelligence Committee rule 9.7 prohibits the disclosure of any confidential report except as specified. So it's basically creating a regime of authorization of disclosure that is more concrete, more specific, and is constitutionally grounded in, in the rules clause. No more common, common law right of access. I, I, a couple of things, and I'm woefully over my time. So with your permission, I'm going to answer the question. The first thing is that FOIA is a statute, and that it takes a lot to overrule a common law right. What's a and that a rule by one house of Congress, in our opinion, does not overrule a well-established common law right. The second is that even the Senate rule talks about confidential records. We would say that even if that applies, this is not a confidential record. It was willingly disseminated to numerous recipients outside of Congress. That makes it not a confidential record. Even if it's classified? The classification is a stickier question where we are arguing that you don't have to give us the classified parts, but you have to give us the unclassified parts. That's where the redactions come in. We don't want to fight over whether or not classified information overcomes the common law rights. But I want to push on, are you saying public record or not, though? We're saying it is a public record. Okay, because? Because it was generated by a body of the government for dissemination to another branch and to the public. So not deliberative? No, so not deliberative. Yes, yes, Your Honor. What's your authority for the notion that a rule is not sufficient to overcome the common law right of access? I think with respect to the judiciary, the federal rules of criminal procedure have been sufficient. So do you have any authority for the notion that a duly enacted committee rule would not be sufficient? Your Honor, I don't off the top of my head, but that doesn't mean I haven't found one. It's when I can't think of it because I wasn't expecting that question. So, so honestly, is the promulgation of Senate Intelligence Rule 9.7 a legislative act? The promulgation of the rule? Yeah, yes. So is the committee deciding when something is subject to the rule, then a legislative act? When a document is subject to the protection of that rule? I would say yes, Your Honor. Then why isn't that the end of your case under the speech or debate clause? Because the committee decided that it wasn't. And later committees tried to change that. The committee, if the committee decided that rule 9.7 didn't apply, we wouldn't be here. The committee. That's the whole reason you don't have a redacted version of the report. Are you asking me if, are you saying because the committee later said that it didn't, that it applied? Is that what you're asking about? Not the first decision? Well, all I'm saying is that you have requested it. They haven't given it to you. And they are citing Rule 9.7 as a reason why you're not getting it. Okay. I understand. So they're citing it. They were for it before they were against it. You know, not to put too fine a point on it. That's fine. I change my mind all the time. The court can change its mind. There's nothing that says that the Senate can't change its mind. The question. If it's a legislative act, it's a legislative act. They might have taken one earlier, and then they've taken a later one. But it's still a legislative act. It's still a legal question as to whether or not it's privileged. If it's not privileged, if a legislative act is taken to declare something fundamentally not privileged that y'all would find it's not privileged, but they vote to consider it privileged, do you have review? I would say yes, because they are violating the law. If it's not privileged, no amount of legislative acts can render it privileged. I have just a detailed question. You bring claims both against the committee and against Senator Warner, and I take it the Larson-Dugan route only applies against an individual in his official capacity. Is that your understanding? I would assume so. I did not get into the finer detail for that. We named both for belt and suspenders to avoid arguing about whether or not it applied or the proper avenue for challenging this. You heard the previous argument. There was a question about whether the Larson-Dugan doctrine applies beyond where there's an officer acting in excess of statutory powers or an officer acting in excess of constitutional authority. Here, your claim relies on a common law right. Do you have anything that you would add to what you heard from prior counsel about why you would disagree with the government on the limitations of the common law right of access? Well, first of all, I think that it would be unwise to say that a government official could violate any common law they wanted and still claim sovereign immunity when it's a federal common law. I think that it is not a court can decide, honestly, right now because it has already held that, albeit indicta, arguably, we would dispute that, but that the common law right of access applies to all three branches of government. There is a more nuanced view that in, I think it was in maybe in Schilling, the House counsel was arguing that the statement that it applies to the legislative branch, read in light of speech or debate, immunity must be limited to Library of Congress, U.S. Capitol Police, and the like, but not to the houses. And so that's a way of explaining the dicta, that it's correct dicta, but it's more limited than one might think. That's going to be your next case. That's the Leopold case. Do you have a response? Because the next case, he's got that obstacle even on that reading, but for you, we could honor that dicta and still leave you without a claim. I think that rather than looking at who it applies to, because, as you can see, the government argues that it protects Library of Congress and the Capitol Police and everything else too. I think that it's a functional test. It's a case-by-case test, where if the entity doing the thing that wants to be the writing the report, writing the policy, whatever it is, if doing it in a non-legislative capacity, or if doing it in something that would not be privileged, it sort of conflates all the facts, it blends them all together, but it comes down to the fact that a committee writing a report for dissemination to the public is no different than the Capitol Police. It's no different than the Library of Congress issuing a policy that affects the public. Well, the district court did say it was not a public record. You're urging us to say it is, but then if you do say it is, then you go to your balancing test. She says national security outweighs the public interest. Right, and that was based on the idea that it was classified without any discussion of whether or not everything in it was classified. She said it was not a public record because of this future debate argument. So if you get past that, then all of a sudden, boom, it's a public record. That was their only stated reason for it not being a public record. Do you have any instances of when any such live reports have ever been disseminated to the public? The committee reports are disseminated all the time. But I mean, this is a torture report. Lots of national security issues. It is well known that the entire purpose of mandatory declassification review, Executive Order 1356, is about dissemination of things that are deemed not entirely classified or declassifying them. FOIA, you get reports all the time. I get reports all the time that have been redacted. B1 is written next to the redactions. Portion markings are written in the original document saying that a paragraph is you. Can you cite us to any case where we have held or any court has held that you must declassify and produce a document in response to a request from the public? You must produce it. Produce a redacted. You must declassify and produce a redacted version of a classified document upon public request. Well, that's all of FOIA. All the B1 cases that say that. The entire rule of segregability say that. National Security Counselor is my firm versus CIA. No, I'm talking about under common law, public right of access, not FOIA. Oh, not for Congress, but for the judiciary, certainly. Most of the... I personally have gotten things disseminated that were redacted that were filed in camera because they were classified. And then I sued to get the document, just a case Zoltek versus United States in the Federal Claims Court a couple months ago. The judge ordered something to be released in redacted form, even though the government claimed it was. What's the site? I don't know the citations. It was called Zoltek, Z-O-L-T-E-K. But what was the basis for your entitlement to access to the document? The public right of access, common law right of access to judicial records, to public records, which is the same right we're talking about here. And without any further ado, I would ask that I'll be given at least a couple minutes to respond to the arguments they make, but I would like to sit down and take some water. Thank you. Good morning, Mr. Caballero. Morning, Your Honor. May it please the Court, Thomas Caballero on behalf of the Senate Appellees. The District Court correctly held that the speech or debate clause bars this common law right of access suit against the Senate Committee on Intelligence and its chairman, which seeks the production of the committee's report on the CIA's detention and multiple times that committee reports are covered within the legislative sphere, and therefore protected by the absolute immunity of the speech or debate clause. This Court itself a few years ago held that a common law right of access suit against the House Intelligence Committee, seeking legislative oversight materials, was barred by the speech or debate clause. A straightforward application... You would just say any committee report, we're done. Why do we even have these lawsuits? Do we have to at least look to the nature of the report? No, the nature of a committee report is to inform the Senate to allow for its legislative deliberations. I want to address a point that was brought up earlier. Committees do many things that have other effects, because most of what Congress does is in public. A committee hearing is to but it's also public, so it informs the public. It can have many other intents and effects. They're protected. The fact they may have these other situations, like informing the executive agencies about issues that arose that were looked at by the committee, doesn't remove it from the speech or debate privilege that absolute immunity still attaches. I have a question about the sequence of decision. The district court appeared to treat the speech or debate clause as a jurisdictional bar, but as I understand it under our cases, if the claim itself is not predicated on the congressional action, but is seeking documents or information, then it's in the nature of a privilege, not in the nature of a jurisdictional. I don't think that's correct here, Your Honor. This court has said that it's a jurisdictional question. It's in the context of the suit being predicated on the legislative act. Right, but this is a suit predicated on the legislative act, where it's come up in an evidentiary situation has been, for instance, in the Brewster case or in the Gravel case, where there was a subpoena matter. Therefore, in a subpoena matter, the question is, does it fall within the immunity and act like a privilege? But this is really, I mean, you can see this as a civil analog, where the subpoena is the claim there, and here the claim in the non-criminal context is a common law right of access. I just wonder whether we have to decide sovereign immunity first, before we can decide. You can decide speech or debate first, before sovereign immunity. You can decide them in any order. They're both jurisdictional. This is a suit. Even if they're not jurisdictional? What if I disagree with you that, in this context, speech or debate is jurisdictional? They're both threshold issues. I believe you could decide in either order as well. But again, this circuit has held speech or debate to be jurisdictional. This is a suit. What are you referring to? I mean, it has held that, but in this case— You have to look and provide citations later. I'm conceding that there are situations in which we've held that it's jurisdictional, but there are also situations in which we've held it's more akin to a testimonial privilege. And if the claim here is based on common law right of access, and the assertion of speech or debate is to say, no, you can't have this, the claim is not— Again, I would— The culpable conduct is the withholding of information. It's not something that Congress did in its—it's not the hearing itself. I think there's two points with that. This is a suit against members of Congress. The courts have said if you sue a member of Congress and speech or debate applies, it's an absolute jurisdictional immunity. Where do they say absolute immunity? Yes. And this court has held that it's— You mean jurisdictional, but typically it's absolute immunity, meaning you don't balance, as opposed to absolute, meaning it's jurisdictional. It's both, but I believe this court has held—I would have to go, Your Honor, but this court has held that it's a jurisdictional protection against suit. And this is a suit. In Brewster, it was an absolute immunity that applied to a subpoena. That was also the case in the Mimpeco case. That was also the case in Gravel v. United States. When it applies to a subpoena, you don't even have the ex ante question of a jurisdictional nature of a suit, where a plaintiff has to demonstrate jurisdiction. You have a subpoena that is being responded to. The speech or debate clause is not a deliberative privilege. It's a fundamental separation of powers protection for the legislative branch. And so it's more than just—for instance, you could never protect speeches on the floor of Congress if it was a privilege because it happened in public. Why did that not waive the privilege? It's because it's not a privilege. It's an immunity from suit. And what this case is, is a suit against a committee of members of Congress. But, I mean, you're insisting ever, ever more loudly, but not actually explaining why, because it's waivable. Subject matter jurisdiction typically isn't waivable. Why is this not more like the subpoena case, where the thing that the enforcer of the subpoena wants is information? Here, it's a civil claim for common law right of action. The thing that the person wants is some congressional information. The structure seems parallel to me, and I'm not sure that you've explained. I would say two things in response to that. First is, obviously, this court has already held that it can affirm a dismissal on jurisdictional grounds on the speech or debate clause. That was Judicial Watch v. Schiff. So that's already the law of the circuit. I would say also that I wouldn't say that, unlike when you're suing about a legislative act, you're just requesting information. The information being requested is legislative information. That's why it falls. It may, on the merits, be entitled to speech or debate. I'm just trying to figure out a question about order of operation and the proper characterization of the effect of your speech or debate. Understood, and I think- Argument. I apologize, Your Honor. You've been, I'm a little surprised at the number of times that you've- Sorry, I would say, let me refer back just to the precedent under Judicial Watch v. Schiff, where this court had a sovereign immunity and a speech or debate dismissal in front of it, and it found that it could reach speech or debate only, it didn't reach sovereign immunity, and affirmed on that ground alone. It did refer to it as a threshold ground, and it cited Steele Co., which I think, as you also referred to that, that even if it's non-jurisdictional, it could be a threshold ground that one could reach without separately establishing jurisdiction. That's how I read that sentence in my opinion, and then the next sentence in which it actually refers to it as jurisdictional is really for, as support for the dismissal being non-merits and therefore without prejudice, and again, it's a little bit of a drive-by consideration of whether the speech or debate assertion there is jurisdictional or not, because it's neither of those sentences really pins down the question that I'm trying to get your enlightenment. I understand, Your Honor, but I would say that, as the Supreme Court has made clear post-Steele Co., that it doesn't have to be a pure jurisdictional question. You can decide threshold issues in any order, and I would say, therefore, this court, as the court did in Judicial Watch v. Schiff, can decide speech or debate before sovereign immunity, and either ground would be sufficient to uphold the decision below. Let's go a little bit to the public record issue about this being deliberative or being a final report, and at what moment in time do we make that decision? Because there seems to be some consideration for post-hoc rationalizations here, that perhaps this could have been legislative or perhaps now we decide that it's not just an oversight report where it's only not providing recommendations, et cetera. Yes, I guess the question is, I don't believe there's ever been a statement by the committee that this report was anything other than a committee report to the Senate. The chair did make clear that she wanted it to be understood and used by the executive branch. The chair doesn't speak for the committee in all purposes, so I don't know if there's been a... And public release. Yes, I don't know if there's been ever a committee decision. In fact, there's been a committee decision to only vote and seek for declassification of the executive summary, findings, and conclusions, which were declassified and were made public. So I don't think there's a question of now the committee's gone back on itself. I think the committee was always doing a committee report, and it never asked the executive branch to undo or declassify the underlying large report. It asked for the original. Therefore, I don't think it's a question of... But under your notion, again, any committee report is not subject to release. Under the Speech or Debate Clause, if it isn't public... Of course, the large majority, well over, I assume, 95, 98% of committee reports are public, so it's only the few reports like this intelligence report that aren't. And under the Speech or Debate Clause, you couldn't sue a committee to force it to disgorge a report that wasn't made public in the normal course of the Senate's business. I believe the district court held it wasn't a public record because the public record doctrine, as delineated in the Washington Legal Foundation, said that it's for... It covers public records for those records that memorialized or essentially memorialized an act or order decision of legal significance. And the court below said, well, reports to the Senate are reports of a subsidiary body to its parent body for its consideration, and that wasn't a final act of legal significance, like passing legislation would be based on the report, and therefore didn't qualify under the doctrine for a public record. It also held it wasn't a public... That even if it was a public record, the balancing here would clearly cut in the government's secrecy favor, given the national security interests in the document, and given this circuit court's previous case discussing how the need to protect against national security risks overcomes common law right of access. What if a hypothetical Senate committee votes that be in the public interest to disclose a redacted version of this report, but it's a lot of trouble to redact all the classified information, so we're just not going to do that. And the administration has said that they don't really want to do that, so we're just not going to do that. And then there's a lawsuit brought under this common law right of access that says, well, court, that's not... The relief we want is just the production of this, of a redacted version of this report. Assuming we were to... Which I know you disagree with. How should we decide that case? Well, I guess it would raise a strong argument that if the Senate committee thought it was a public record, but just was not choosing to submit for declassification, that it'd be hard to argue it wasn't considered a public record. But you would still have to apply the doctrine, as this discussed in Washington Legal, about was this truly a document that was created and kept to memorialize some final act, decision, or order of legal significance. I would also say that in order to release this document, as the plaintiff has noted, it needs to go through a declassification review. And the executive branch is not a party here to be ordered to undergo a declassification review. And also, there's no precedent that the judicial branch can order a congressional committee to engage such a request to the executive branch and how it handled its documents. So I think even in that instance, it's not clear that that would answer the question. But the report said that it was not making any recommendation for legislation. And then I believe it was in April 2014, the committee voted for declassification and subsequent public release. So how do we square that? The committee voted for declassification of the executive summary and finding conclusions, not the whole report. And committee reports don't have to recommend legislative. They can report facts to the Senate, and it's up to the Senate to determine what to do with those facts. It doesn't have to have legislative recommendations to make it within the legislative sphere. It can find facts and present those facts to the committee. I think we have Mr. Pullum for the United States. Good morning, Mr. Pullum. Good morning. You have to move quicker. You might lose your spot. Too slow. Good morning, and may it please the court. Thomas Pullum for the United States as our brief, at least three independent reasons why this common law right of access claim fails. The first was sovereign immunity, and the second went to kind of more specific inquiries about this particular document. I'm happy to answer any questions about sovereign immunity. I'll be up here next. I just wanted to make sure that I had a chance to address the kind of specific arguments with respect to classified information. So happy to take your questions in any order. On the sovereign immunity point, I have understood Larson-Dugan to be analog to Ex parte Young, that one can bring an officer suit to enforce a legal duty. And I understand that the Congress and the United States are taking the position that it does not apply to a common law right. So is it your position that if this were a case brought under Ex parte Young against a similarly situated state legislature, that even though that claim could proceed under a common law right of action, that that cannot be done against the Congress? So the doctors do have certainly much in common. They serve different purposes. The purpose of an Ex parte Young suit is to ensure the supremacy of federal law. When we're looking at Larson-Dugan involving the sovereign immunity of the United States, the question is whether the official is acting as the sovereign, exercising federal sovereign authority. So for Ex parte Young, we do not ask whether the state official has state authority. The kind of state law question is put aside by Pennhurst. All that we ask is whether there is a violation of federal law and whether prospective relief is sought. So the natures of the inquiry are very different. So I think to answer your question directly, if a suit was against a state actor and the argument was that the state actor violated state common law, that wouldn't come into the Ex parte Young analysis. The only relevant question is, is there a violation of federal law, which is supreme? And so they could bring a claim under federal common law right of access? To my knowledge, a court has not held that the federal common law right of access applies to state actors. Well, I'm just following your logic about the supremacy of federal law and that that's Ex parte Young is about. And I mean, is Ex parte Young not also about ensuring the enforceability of federal law? Not just its supremacy, but its enforceability. It's not just a shield, it's a sword. Yes. And not in this case. In the next case, the plaintiff cited two courts of appeals that have held that at least some aspects of federal common law are supreme for the Ex parte Young analysis. But we know that the common law can't come into play in the Larson-Dugan analysis because the Supreme Court said so. I think that's the square holding of Larson itself, which expressly rejected a third category based on the general law and said quite clearly that as as an officer's actions don't conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they violate the general law. So I think for those reasons, we kind of have that question answered here. And to bring up a related question, again, before I get to the classified information, I believe Judge Pillard, you had asked a question. Why would Larson draw this line? Why would it say statutory and constitutional claims and not common law claims? And I think the answer to that is that under Larson, the question is whether the officer acts for the sovereign so that his actions can be to the sovereign. When we're trying to figure out when the official acts as the sovereign, we're looking at the officer's kind of authority and duties. Those are created by statute. That's how the federal government creates offices and gives duties and authorities to those offices. It's sort of a strange analysis because if the why would that imply that the claim has to be based on statute or the Constitution? Just because you're bringing a common law claim doesn't mean that the officer is acting only under common law authority. No, but the claim has to be that the officer is not acting on behalf of the sovereign. And the common law claim doesn't get at that question. The Supreme Court of Larson said, because we're asking this question, the plaintiff needs to clearly identify in their complaint the specific statute they're relying on. And that's to enable the court to determine whether the officer was acting outside of properly delegated authority. So just identifying a common law cause of action doesn't get at that. Seems like that kind of begs the question, maybe I'm asking the same thing that Judge Pillard just did, but it seems like the premise of your question is that the sovereign is not bound by common law. I mean, if the sovereign is bound by common law, then the official operating on behalf of the sovereign is also bound by common law, the same as they would be bound by a statute or bound by provision of the Constitution. Am I missing something? No, I just think the Supreme Court directly answered that question when it said, if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are actions of the sovereign, whether or not they are tortious under general law. And the court elsewhere said, we're asking whether the officer's illegal that they can be enjoined without implicating sovereign immunity. And it specifically said that these actions are so illegal only if they're not within the officer's statutory powers or they're constitutionally void. So just to follow up, I think in that same passage, the court says that there might not be immunity from damages for a tortious act, but that's different than essentially a mandamus-type action where you're trying to force an official to act. So the court seemed to create a distinction between an action like this, which is in the nature of mandamus or injunctive relief, compelling an official to do or not do versus an action for damages. Well, I understood the relevance there to be kind of, you're asking whether the injunction against the officer would kind of run against the sovereign or just the officer himself because he was not acting, his actions could not be imputed to the sovereign. And when actions can be imputed to the sovereign, then the injunctive relief is barred just the same as damages, which is a separate question from whether there could be a court suit against the officer in his personal capacity. But when we're dealing with official capacity suits and the officer, his actions are imputed to the sovereign, then the relief runs against the sovereign and is barred. And I would like to turn to some of the arguments specifically about classified information here. First, on the public records inquiry, this court has recognized that there is just no right of access to information that's kept secret for important policy reasons. And we've cited a long tradition of recognizing the important policy reasons that call for the protection of national security information. I don't think there's any meaningful sense of the word public in which classified documents could be considered public records. The executive branch has constitutional authority not only to control access, to kind of designate this information and control access, but decide who has access to it. But his claim is we don't want any of the classified information. We just want a redacted version of the full report. So just as an initial matter, that's not what was requested in his complaint. He asked for the report because it is a public record and said that there was a public interest in disclosure of the full report. And he asked for the report to be provided to him. Is that the posture that the district court decided the case or did the plaintiff ever refine? It seems like when the appeal plaintiff has refined this argument to say, no, we're really only asking for it to go through the declassification process. At least that's what I took to be the nature of the argument at this stage. Yeah. So even if that's true, I'm not aware of any authority that writing that courts have kind of a common law authority to require this. We can look at the court's most recent case involving a common law claim for a classified document. And there it was actually a judicial record. And the court said simply in one sentence that the law of the circuit is that the need to protect classified information outweighs any public interest. The court did not say, well, can we break there? It was a video. Can we break this video down, see if there are any unclassified frames of the video and release that? The court treated the record as a whole, recognized that it was classified and said that's the end of the story. Just so that I'm clear. What case did you study? I'm sorry, that's DIAB. Okay. But D-H-I-A-B. Just so that I'm clear, is there a waiver or picture issue here in that that the plaintiff never said in the district court, all we want is redacted version. So I'm not sufficiently familiar with all of the documents. That's fine. I don't know that that's not the way the district court, I didn't read the district court's opinion to treat it that way. District court I think similarly understood that Mr. Musgrave was looking for the whole document. And just on this notion of segregability, that Musgrave relies on, I mean, that is a concept under FOIA that's required by statute. So what I think in effect, Mr. Musgrave is asking is for the court to import the FOIA concepts he likes like segregability, ignore the ones he doesn't like the exclusion of Congress from the scope of FOIA and kind of select this mix that the court can impose through its limited common lawmaking powers. That sounds more like a legislative authority than a judicial authority. And I don't know of any cases that have said that a court can require the executive branch to undertake this review, especially when the executive branch isn't even a party to the litigation. I mean, because FOIA kind of takes care of this for executive branch documents, this is only going to come up when someone requests classified information from the legislative branch. So where we're going to end up is a court saying, well, legislative branch, you have to disclose this. You have to request declassification. And executive branch, you have to participate. And that seems like a fairly aggressive posture to take in this position. And one last point, if I could, is just a point to the relevance of this court's ACLU versus CIA case, which involved the FOIA request for this very same document. And this court held that the committee had clearly expressed its intent to control the document and make decisions about public release, and that overriding that intent would raise separation of powers concerns. And I think if those are sufficient to control the outcome in a FOIA case, they apply necessarily in a heightened manner when we're relying on common law. I hate to keep you up longer, but just circling back to some of the questions about the structure of the inquiry and the jurisdictional questions, I understand that you do not think it applies, but you also argue, I think, in your brief that if the Larson-Dugan exception was triggered by the common law right of access, then the question of jurisdiction merges with the question on the merits. And maybe it's just not parallel. I've been thinking about Larson-Dugan as the less case the Supreme Court said, we don't merge with the merits, the question whether there's jurisdiction under Ex parte Young. And I wonder what you think about that, the precedents that say you have to look at the merits to figure out whether the Larson-Dugan exception to sovereign legal foundation, that is the precedent set in that case. We accepted that and argued within that. We haven't made any kind of other argument here. I kind of don't want to get ahead of what the SG might decide if this were kind of free to go wherever we could go. But I will note that Larson itself in footnote 10 said jurisdiction in this type of case does rest on the decision on the merits because the court was asking whether it was just an error of law that was claimed or outside the scope of authority. And for that reason, as I mentioned before, that's why it's incumbent on the plaintiff to So I do think at least if we're looking at Larson, there is some reason to believe that Washington Legal Foundation might have been correct in that regard. And it's similar to how this court approaches mandamus where the jurisdiction and merits merge. These are kind of not totally dissimilar ideas. So that that may provide some. It's true. Well, that's, I guess, why I've been kind of asking all these questions about what claim is this? I think here, Mr. Musgrave explicitly in 1361 seems to be a mandamus claim. And as you say, they're kind of whether we have mandamus jurisdiction merges with the merits to the extent that we look at whether there's clear right to relief and their duty to act and that sort of thing. And so. So given that. Why isn't that really the kind of cleanest and easiest way to decide this case? I think that's certainly an available option. We, as I. In one of the briefs, I apologize, which one we have not argued that mandamus relief is not available against the legislative branch. I know there is case law to that that effect out there. So that's just not an argument we raised. But even if it is, if he doesn't meet the standard, we don't have jurisdiction. That's right. So that's just another jurisdictional ground. I think all of this, because of the merging and the presence of mandamus, basically all of this is jurisdictional. And so the court has kind of several different off ramps. It could go through Larson Dugan. It can go through the scope of the common law, the particular balancing the mandamus. I think all of these are generally available. And is it your view that if 1361 were unavailable, as the circuits to have addressed it, have held again in an action against legislative actors, then we still in recognizing jurisdiction under 1331, it would still be in the nature of an affirmative injunctive request that would be subject to those same inquiries that Judge Wilkins mentions, the clear right to relief, the clear duty to act, no adequate alternative. I think that's right. This court has recognized in the past that when you're seeking this type of injunction, it is akin to mandamus. And so the standard should be similar. And you're thinking of? Oh, goodness. I think there's a footnote in on. Yeah, I believe. I didn't mean to. Yeah, I think it's in Swan. There's a footnote that says, we note that a request for an injunction based on general federal question statute is essentially a request for writ of mandamus. So same standard there. You've been very helpful. Thank you. Thank you very much. Now we'll hear from Mr. McFadden on his rebuttal. So I'm just going to respond to some of the things that the was not classified information, but it was information that the government asserted was protected for national security reasons. That was case number 96166 in the federal claims, docket 573. As far as a classified information case, there was a declaration and a motion that were classified and were ordered to be released on the public record by Judge Howell in national security counselors versus CIA case number 11443 in motion by a minute order on February 15th, 2013. That was one of my cases. And in fact, it was my declaration that they she ordered to be released. I'm just going to say to the 1 of the most recent points that the government council made that at the district level, we definitely mentioned segregability. We definitely mentioned redactions. And I'll quote from our reply for partial settlement judgment that Musgrave does not maintain that the secrecy of national security information. In other words, the classification of information is outweighed by a countervailing public interest. He simply argues that there is at least 500 pages worth of information in the report, which is not classified, if not much more. And then we'll go on to talk about how no circuit has held that the presence of classified information in a document means that the entire document can be withheld going back to 1977 in Weisman versus CIA. To one of Judge Wilkinson's questions, I think the best analog here to his question about what would happen if the Senate then ordered something to be not released is the hypo that what happens if there is a published report and it is printed by the GPO and the GPO runs out and Congress then votes not to release it anymore. Can you sue for that for a copy of that report saying that it was intended to be disseminated and it was disseminated? We would say yes. And so that is a variation of why. Yes, but why? Because it was not the privilege was deemed not to apply. It was ordered to be released. They can't take it back later when it politically changes hands. And as far as... What's the precedent for the no take back rule? This is a case to person question as far as I've found. So the precedent is playground rules. I mean, it's one of those things that it's logic. It's the way that a search privilege or does not, if a client does not waive a privilege in an attorney-client matter, they can't later claim it's privileged. Privilege is or it isn't. When you decide that something is not privileged, you can't change your mind. And that's... That's usually the case after it's cats out of the bag and it's been disclosed. But I don't know that I've seen a decision that said that if there's a privilege review and something is deemed not privileged and before the document's actually disclosed, they do another review and they claim the document is privileged. Well, they can't do that because they can't change their mind. We would argue that it was disclosed when it was sent to all the executive branch agencies with no restrictions on kind of allows a clawback provision that if it's inadvertently disclosed, you claw it back. This wasn't inadvertently disclosed. There are takebacks. If it was inadvertent. I'll grant you that. Kindergarten does not directly apply to federal law, but yeah, I'll grant that. And in closing, I would simply say that the Supreme Court has twice in McMillan and Hutchinson that this is the way things should be. In McMillan, doubtless also a published report may, without losing speech or debate, clause protection be distributed to and used for legislative purposes by members of Congress, congressional committees, and institutional and individual legislative functionaries, not the executive branch. And in Hutchinson, the transmittal of such information by individual members in order to inform the public or other members, if not a part of the legislative function or the deliberations that make up the legislative process, put those two together. And you have that dissemination outside of Congress and the stated desire to get it declassified for public release means it's not privileged. And that's where the question ends as far as we're concerned. Thank you very much. And if you have no further questions. Thank you. The case is submitted.
judges: Pillard, Wilkins, Childs